IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| PHAP ANH LE,<br>Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT<br>MANAGEMENT, INC., and<br>ENCORE CAPITAL GROUP, INC.,<br>Defendants. | §<br>§<br>§<br>§<br>§  Civil Action No. 1:25-cv-870-ADA-SH<br>§<br>§<br>§<br>§<br>§ |

# PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, **PHAP ANH LE** ("Plaintiff"), files this Second Amended Complaint against Defendants **Midland Credit Management, Inc.** ("MCM") and **Encore Capital Group, Inc.** ("Encore"), and hereby demands a trial by jury on all issues so triable.

# I. INTRODUCTION

1. This action seeks damages and injunctive relief against Defendants **Midland Credit Management, Inc.** ("MCM") and **Encore Capital Group, Inc.** ("Encore") for their unlawful, unfair, unconscionable, false, and deceptive debt collection and credit reporting practices.

2. MCM, a major debt collector operating nationwide, including in California and Texas, is a wholly owned subsidiary of Encore. Together, these Defendants have engaged in systemic misconduct in their attempts to collect an alleged debt from Plaintiff, which Plaintiff contends is either not owed, was incurred as a result of identity theft, or is otherwise unenforceable.

3. Defendants' actions constitute repeated violations of federal law, state law, and Plaintiff's common law rights, including specifically:

    - The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.
    - The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.
    - The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

1

- California laws, including:
    - The California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 et seq.
    - The Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 et seq.
- Texas laws, including:
    - The Texas Debt Collection Act ("TDCA"), Tex. Fin. Code § 392.001 et seq.
    - The Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"), Tex. Bus. & Comm. Code § 17.41 et seq.
    - The Texas Identity Theft Enforcement and Protection Act ("ITEPA"), Tex. Bus. & Comm. Code § 521.001 et seq.
- Plaintiff's common law privacy rights, including Intrusion Upon Seclusion.
- Plaintiff's common law rights against Negligence and Defamation Per Se.

4. Defendants' specific unlawful actions include, but are not limited to:
   a. Falsely threatening legal action, including wage garnishment and litigation.
   b. Failing to provide proper debt validation.
   c. Continuing collection activities after receiving a dispute.
   d. Willfully and unlawfully reinserting disputed tradelines, furnishing inaccurate information to credit reporting agencies, and improperly "re-aging" debts.
   e. Making unauthorized credit inquiries ("soft pulls") without a permissible purpose.
   f. Attempting to collect debts that Plaintiff contends resulted from identity theft.
   g. Engaging in a systemic pattern of fraudulent activity designed to coerce payment on invalid or unverified debts.

5. As a result of these unlawful and deceptive practices, Plaintiff has suffered severe financial harm, significant damage to his credit standing and reputation, and substantial emotional distress.

## II. PARTIES

6. Plaintiff **Phap Anh Le** is a consumer residing in Austin, Travis County, Texas.
7. Defendant **Midland Credit Management, Inc.** ("MCM") is a debt buyer and debt collector that regularly conducts business in the State of Texas and throughout the United States. Upon information and belief, MCM's principal place of business is located at 350 Camino de la Reina, Suite 100, San Diego, CA 92108. MCM may be served with process through its registered agent, **Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company**, at 211 E. 7th Street, Suite 620, Austin, TX 78701.

8. Defendant **Encore Capital Group, Inc.** ("Encore") is a publicly traded holding company and the parent of MCM. Encore exercises substantial control and oversight over MCM's operations, including its debt collection and credit reporting practices. Upon information and belief, Encore's principal place of business is located at 350 Camino de la Reina, Suite 100, San Diego, CA 92108, and it conducts business within the Western District of Texas. Encore may be served with process through its registered agent, **C T Corporation System**, at 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136 USA.

## III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to **28 U.S.C. § 1331** because this action arises under the **Fair Debt Collection Practices Act** (15 U.S.C. § 1692 et seq.), the **Fair Credit Reporting Act** (15 U.S.C. § 1681 et seq.), and the **Racketeer Influenced and Corrupt Organizations Act** (18 U.S.C. § 1961 et seq.).

10. This Court has supplemental jurisdiction over Plaintiff's state law and common law claims pursuant to **28 U.S.C. § 1367**, as these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in the **Western District of Texas, Austin Division** pursuant to **28 U.S.C. § 1391(b) and (c)** because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants are subject to personal jurisdiction in this district.

## IV. FACTUAL BACKGROUND

12. At all times relevant hereto, Plaintiff maintains good credit and financial standing. On or about April 28, 2025, Defendant MCM began attempting to collect an alleged debt from Plaintiff, purportedly originating from Original Creditor Bank of Missouri, with an alleged account number ending in 32926XXXX, and an alleged balance of approximately $1,114. Plaintiff disputes this alleged debt because of the inaccuracy of the balance, Plaintiff's belief that it resulted from identity theft, and other reasons detailed below, including the absence of any contractual relationship with MCM. Defendant MCM engaged in multiple unlawful practices in its attempts to collect this alleged debt and interfere with Plaintiff's credit, including:

### a. False Threat of Wage Garnishment and Litigation

  i. On or about April 28, 2025, during a recorded phone call, an agent of MCM falsely threatened Plaintiff with wage garnishment if he did not immediately pay the alleged debt.

  ii. At the time of this threat, MCM had no legal right or intent to garnish Plaintiff's wages, as no judgment had been obtained, and the alleged debt was disputed and unvalidated.

    iii. This false threat is consistent with a documented pattern of MCM making false threats of legal action against consumers. This was a direct violation of the FDCPA. (See Exhibit 2, Call Recording Transcript/Notes).

**b. Failure to Send Initial Validation Notice**

    i. Defendant MCM failed to provide Plaintiff with a written validation notice of the alleged debt within five days of its initial communication (the April 28, 2025 phone call), as required by 15 U.S.C. § 1692g(a).

**c. Continued Collection After Oral Dispute & Insufficient Validation**

    i. On or about April 28, 2025, Plaintiff orally disputed the alleged debt with MCM and requested validation of the debt.

    ii. Despite this dispute, MCM continued its collection activities, including reporting the alleged debt to consumer reporting agencies. (See Exhibit 3, CRA responses indicating "verified" status).

    iii. The subsequent "validation" provided by MCM on or about May 28, 2025, was insufficient, as it did not include documentation of the original creditor, the original account number, or the chain of title proving MCM's ownership or right to collect.

**d. Unauthorized Reinsertion of Disputed Tradeline, Willful Furnishing of Inaccurate Information, and Improper Debt "Re-aging"**

    i. After Plaintiff disputed the alleged debt with MCM and the consumer reporting agencies, the tradeline for the alleged debt was temporarily removed or suppressed from Plaintiff's credit reports. (See Exhibit 1, credit reports showing tradeline).

    ii. However, on or about May 24, 2025, MCM unlawfully caused the disputed tradeline to be reinserted onto Plaintiff's credit reports with Experian, TransUnion, and Equifax without providing certification of its completeness and accuracy, as required by 15 U.S.C. § 1681i(a)(5)(B).

    iii. This reinsertion occurred despite MCM's failure to provide proper validation.

    iv. Crucially, in response to Plaintiff's dispute specifically challenging the account balance and underlying liability, MCM conducted a purportedly "updated" investigation.

v. On or about May 28, 2025, MCM responded to a dispute stating that "information unrelated to your dispute has been updated" regarding the alleged debt, while simultaneously maintaining that the core disputed balance information was "verified."

vi. This explicit acknowledgment of updating tangential information while refusing to address the fundamental accuracy of the debt or Plaintiff's liability demonstrates a deliberate failure to conduct a reasonable investigation and willful furnishing of inaccurate information. It indicates that MCM is aware of an issue that prevents it from fully verifying the disputed information, yet it continues to report the debt.

vii. This conduct also constitutes an improper attempt to "re-age" the debt.

viii. The Fair Credit Reporting Act (FCRA) dictates that most negative information, including collection accounts, can remain on a consumer's credit report for seven years plus 180 days from the Date of First Delinquency (DOFD).

ix. The DOFD is the date the account first became delinquent and was never brought current again.

x. It is illegal for a furnisher to change the DOFD.

xi. By updating the "payment date" while neglecting the core dispute, MCM creates a misleading impression that the account is more active or recent.

xii. This manipulative tactic attempts to prolong the negative impact of the alleged debt on Plaintiff's credit score and is highly suspect, as it seeks to influence credit scoring models or lenders without addressing the fundamental accuracy or legality of the debt itself.

### e. Unauthorized "Soft Pulls" / Credit Inquiries

i. On multiple occasions, including specifically on September 23, 2024; January 7, 2025; January 13, 2025; March 8, 2025; and April 25, 2025, MCM made unauthorized "soft pulls" or inquiries on Plaintiff's credit report from Experian. (See Exhibit 1, Experian credit report showing inquiries).

ii. While "soft pulls" generally do not impact credit scores, they indicate unauthorized access to Plaintiff's credit information without a permissible purpose under the FCRA.

### f. Identity Theft

i. Plaintiff believes the alleged debt originated from identity theft.

    ii. He has diligently taken steps to report and address the identity theft, including submitting an Identity Theft Declaration to the relevant authorities.

    iii. MCM's continued attempts to collect this debt after being informed of the identity theft and without providing proper validation of the debt's authenticity or Plaintiff's liability are unlawful.

**g. Negative Reporting During Litigation and Further Dispute**

    i. Despite the ongoing dispute and this litigation (filed on or about May 8, 2025), MCM has continued to report the alleged debt as delinquent to consumer reporting agencies, further damaging Plaintiff's credit. (See updated Exhibit 1, credit reports showing post-litigation negative reporting).

    ii. This includes reporting on or about May 24, 2025. This constitutes unfair and deceptive reporting.

    iii. On or about June 1, 2025, Plaintiff filed a formal complaint against MCM with the Consumer Financial Protection Bureau (CFPB Complaint ID: 250601-21220675) detailing the unlawful collection and reporting practices, including the May 24, 2025 report. (See Exhibit 6, CFPB Complaint).

    iv. On May 28, 2025, Experian completed its investigation into Plaintiff's dispute concerning this alleged debt. The official dispute result from Experian stated: "The information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated." (See Exhibit 7, Experian Dispute Result).

    v. This finding from Experian explicitly indicates that while some elements of the account data might be present, there is information "unrelated to your dispute" that has been updated. This ambiguous and contradictory response, triggered by MCM's own reporting and alleged "investigation," directly suggests that MCM's response to the dispute was insufficient, misleading, or designed to avoid addressing the core issue of Plaintiff's liability for the debt.

    vi. On June 16, 2025, MCM provided an interim response to the CFPB regarding Plaintiff's complaint.

    vii. In this response, MCM stated it had "ceased collection efforts and will not furnish information for the account to the three major credit reporting agencies during this period, in accordance with the Texas Finance Code."

    viii. This commitment, made after the continued reporting on May 24, 2025, and the Experian finding on May 28, 2025, implicitly acknowledges the ongoing dispute

and potential issues with the account. (See Exhibit 8, MCM Interim CFPB Response).

### h. Systemic Misrepresentation and Collection Practices: A Pattern of Enterprise-Wide Misconduct

i. Defendant MCM's conduct, as experienced by Plaintiff, is not an isolated incident but is demonstrably part of a broader, systemic pattern of misconduct by the entire Encore Capital Group enterprise. This pattern is evidenced by:

ii. **Extensive Consumer Complaints:** Numerous consumer complaints filed with regulatory bodies, particularly the CFPB, explicitly name and document similar egregious allegations against MCM, Encore Capital Group, and other subsidiaries. (See Exhibit 5, CFPB Consumer Complaint Records).

iii. **Significant Regulatory Enforcement Actions and Settlements:**

- **January 2015 – New York State Attorney General Lawsuit:** Encore Capital paid a $675,000 penalty and vacated over 4,500 judgments after the NY AG exposed the use of "robo-signed" affidavits and improper lawsuits to collect time-barred debts.

- **September 2015 – CFPB Enforcement Action:** Encore and subsidiaries purchased unverified debts, threatened lawsuits without intent to litigate, and used deceptive affidavits. Encore paid up to $42 million in consumer refunds, $10 million in penalties, and stopped collecting over $125 million in debts.

- **October 2020 – CFPB Lawsuit and Settlement:** The CFPB sued Encore again for violating the 2015 order. Allegations included suing consumers without documentation, failing to respond to document requests, and collecting on time-barred debts without disclosures. Encore settled for $15 million in civil penalties and extended compliance obligations through October 2025.

- **Ongoing Class Action Litigation:** A proposed class action in New York alleges Midland Credit Management issued false litigation threats in 2017, followed by contradictory statements acknowledging those threats were not genuine—classic FDCPA violations under § 1692e(5) and (10).

iv. These widespread regulatory actions, settlements, and private litigation establish that the misconduct experienced by Plaintiff is part of Encore Capital Group's pervasive, long-standing, and deliberate business practices.

### i. Scheme to Defraud and Predicate Acts of Racketeering Activity

7

    i. Defendant MCM, acting as a key operational entity within the larger Encore Capital Group enterprise, engaged in a systematic and continuing scheme to defraud Plaintiff and similarly situated consumers.

    ii. The purpose of this scheme was to collect and profit from alleged debts that MCM knew or should have known were invalid, unenforceable, or the result of identity theft.

    iii. The overarching objective of this scheme was to coerce consumers into paying debts not legitimately owed and to unjustly enrich MCM and the broader Encore Capital Group.

    iv. As part of this fraudulent scheme, MCM engaged in numerous predicate acts of racketeering activity, including:

**1. Mail Fraud (18 U.S.C. § 1341):**

- Mailing collection letters misrepresenting the validity of debts
- Threatening litigation or wage garnishment without lawful basis
- Sending notices about time-barred or unverified debts
- Issuing deceptive letters under the Asset Acceptance LLC name to intimidate consumers

These acts mirror allegations and findings by regulatory agencies and class action lawsuits.

**2. Wire Fraud (18 U.S.C. § 1343):**

- Electronically transmitting false tradeline data to credit bureaus
- Re-aging debts by updating payment dates while ignoring disputes
- Sending deceptive electronic communications to regulators and consumers
- E-filing lawsuits in state courts using incomplete or misleading affidavits

These transmissions furthered the collection of debts that MCM could not legally or truthfully enforce.

    v. **Pattern of Racketeering Activity:** These predicate acts establish both closed- and open-ended continuity:

- **Closed-Ended Continuity:** The conduct spans at least ten months (September 2024 to July 2025) and reflects repeated use of the same fraudulent tactics. Encore Capital's practices trace back to at least 2015 and earlier, as documented by regulators.
- **Open-Ended Continuity:** The misconduct continues, posing a future threat. As of May 24, 2025, MCM was still reporting disputed debts. The 2020 CFPB consent order remains in effect until October 2025 due to prior noncompliance. Encore's systematic pattern targets millions of consumers, demonstrating that the enterprise's business model is built on illegal and fraudulent practices.

Plaintiff alleges that MCM and Encore Capital Group together constitute an enterprise whose standard business practice includes collecting on unsubstantiated, time-barred, or fraudulent debts; using false threats; manipulating credit reporting; and engaging in fraudulent mail and wire communications—all in pursuit of profit.

13. As a direct and proximate result of Defendant MCM's unlawful actions, Plaintiff has suffered actual damages, including but not limited to damage to credit reputation, denial of credit (See Exhibit 4), emotional distress, anxiety, humiliation, loss of time, and out-of-pocket expenses for credit monitoring and legal research.

# V. CAUSES OF ACTION

## COUNT ONE – FDCPA: False or Misleading Representations
(15 U.S.C. § 1692e)

14. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

15. Defendant MCM is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

16. The alleged obligation is a "debt" as defined in 15 U.S.C. § 1692a(5).

17. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1692a(3).

18. Defendant MCM violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations in connection with collecting a debt, including but not limited to:
    a. 15 U.S.C. § 1692e(4): Representing that nonpayment would result in wage garnishment, despite lacking a lawful basis and intent to pursue such action, as detailed in Paragraph 12(a). This conduct reflects a pattern of false threats, corroborated by other lawsuits against Defendants.
    b. 15 U.S.C. § 1692e(5): Threatening action that cannot legally be taken or was not intended to be taken. MCM's threat of garnishment was unlawful and not genuinely intended,

      consistent with its history of empty legal threats, as described in Paragraph 12(a).

    c. 15 U.S.C. § 1692e(10): Using false representations or deceptive means to collect debts. MCM's conduct—including false threats, inadequate validation, misrepresentations, and re-aging tactics—constitutes deceptive collection activity, as detailed in Paragraphs 12(a), 12(c), and 12(d).

19. As a direct and proximate result of these violations, Plaintiff has sustained actual damages, including emotional distress, anxiety, humiliation, reputational harm, and financial losses.

20. Plaintiff seeks statutory damages of up to $1,000 per action, plus costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT TWO – FDCPA: Validation of Debts

(15 U.S.C. § 1692g)

21. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

22. Defendant MCM is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

23. The alleged debt is a "debt" within the meaning of 15 U.S.C. § 1692a(5).

24. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

25. Defendant MCM violated 15 U.S.C. § 1692g by failing to provide required validation notices and continuing collection activities after Plaintiff disputed the debt, including:
    a. § 1692g(a): Failing to send a written validation notice within five days of the initial communication on April 28, 2025, as described in Paragraph 12(b).
    b. § 1692g(b): Continuing collection efforts, including credit reporting, despite Plaintiff's dispute and MCM's failure to properly verify the debt, as detailed in Paragraphs 12(c) and 12(g).

26. As a direct and proximate result, Plaintiff has sustained the damages described above.

27. Plaintiff seeks statutory damages of up to $1,000 per action, along with reasonable costs and attorney's fees, pursuant to 15 U.S.C. § 1692k.

## COUNT THREE – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA): UNFAIR OR UNCONSCIONABLE PRACTICES

(15 U.S.C. § 1692f)

28. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

29. Defendant MCM is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

30. The alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

31. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

32. Defendant MCM violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect a debt, including but not limited to:
    a. Violating § 1692f(1) by attempting to collect a debt that Plaintiff believes resulted from identity theft and which MCM failed to properly validate, as detailed in Paragraphs 12(c) and 12(f).
    b. Engaging in other unfair or unconscionable practices, including:
        i. Continuing to report negative credit information after Plaintiff disputed the debt;
        ii. Failing to validate the debt as required by law;
        iii. Conducting unauthorized credit inquiries into Plaintiff's consumer report; and
        iv. Improperly "re-aging" the debt on Plaintiff's credit report to create the false appearance of recent activity, as detailed in Paragraphs 12(d), 12(e), and 12(g).

33. As a direct and proximate result of Defendant's violations of the FDCPA, Plaintiff has suffered actual damages as previously described.

34. Plaintiff seeks statutory damages of up to $1,000 per action, along with reasonable costs and attorney's fees, pursuant to 15 U.S.C. § 1692k.

## COUNT FOUR – VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA): DUTY OF FURNISHERS & WILLFUL NONCOMPLIANCE

*(15 U.S.C. §§ 1681s-2(b), 1681n)*

35. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

36. Defendant MCM is a "furnisher of information" within the meaning of 15 U.S.C. § 1681a(f).

37. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

38. Upon receiving notice of Plaintiff's disputes from consumer reporting agencies, Defendant MCM failed to conduct a reasonable investigation, as described in Paragraphs 12(d) and 12(g).

39. Specifically, in response to Plaintiff's dispute of the balance and liability, MCM asserted that it had updated only "information unrelated to your dispute," while continuing to report the disputed balance as verified.

40. This selective updating demonstrates an unreasonable investigation that ignored key details of Plaintiff's disputes and resulted in materially false information remaining on Plaintiff's credit report.

41. Defendant MCM further violated its obligations under 15 U.S.C. § 1681s-2(b) by failing to fully investigate, correct, or delete inaccurate information after notice of Plaintiff's dispute, and

by re-inserting the tradeline without certifying its completeness and accuracy, as described in Paragraph 12(d).

42. MCM's conduct in "re-aging" the debt—by updating only tangential details such as payment dates—misrepresented the true age of the debt and negatively affected Plaintiff's credit scoring. This conduct demonstrates willful noncompliance with MCM's obligations under 15 U.S.C. § 1681s-2(b), even though the duty to ensure accurate reporting generally arises under 15 U.S.C. § 1681s-2(a). Plaintiff does not seek to enforce § 1681s-2(a) directly, but alleges this conduct as evidence of MCM's willful and reckless disregard for its duties under § 1681s-2(b).

43. Defendant MCM's conduct constitutes willful noncompliance with the FCRA, in violation of 15 U.S.C. § 1681n, as MCM knew or acted in reckless disregard of its obligations, deliberately evading a reasonable investigation and engaging in calculated data manipulation.

44. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained actual damages, including damage to his credit reputation, denial of credit, emotional distress, and time and expenses incurred in addressing the misconduct.

45. Plaintiff seeks statutory damages of $100 to $1,000 per violation, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT FIVE – VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA): IMPERMISSIBLE ACCESS

*(15 U.S.C. §§ 1681b, 1681n)*

46. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

47. Defendant MCM accessed Plaintiff's credit report through multiple "soft pulls," as described in Paragraph 12(e).

48. These credit inquiries were made without any permissible purpose under 15 U.S.C. § 1681b(f).

49. The inquiries were unrelated to any legitimate credit transaction, employment relationship, or other authorized purpose permitted under the FCRA.

50. Defendant MCM's actions constitute willful noncompliance with the FCRA, in violation of 15 U.S.C. § 1681n.

51. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including invasion of privacy, emotional distress, and potential harm to his credit.

52. Plaintiff seeks statutory damages of $100 to $1,000 per violation, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT SIX – NEGLIGENCE

*(Texas Common Law)*

53. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Defendant MCM owed Plaintiff a duty to conduct lawful, accurate, and non-deceptive debt collection practices, and to properly investigate disputes, particularly where identity theft was alleged.

55. Defendant MCM breached this duty through conduct including, but not limited to:
    a. making false threats;
    b. failing to validate the debt;
    c. continuing collection efforts after receiving notice of dispute;
    d. conducting unauthorized credit inquiries; and
    e. re-aging the debt to appear more recent than it was,
       as detailed in Paragraphs 12(a) through 12(g).

56. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered damages, including reputational harm, financial losses, emotional distress, and anxiety.

## COUNT SEVEN – DEFAMATION PER SE

*(Texas Common Law)*

57. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

58. Defendant MCM knowingly and maliciously published false statements to third parties, including credit reporting agencies, on or about May 24 and May 28, 2025, and thereafter, as detailed in Paragraphs 12(d) and 12(g).

59. These false statements included reporting that Plaintiff owed a valid debt and that the debt was delinquent, despite MCM's knowledge of Plaintiff's disputes and possible identity theft.

60. MCM's selective updating of "unrelated" information, while continuing to maintain the disputed balance on Plaintiff's credit reports, further demonstrates malice and reckless disregard for the truth, as detailed in Paragraph 12(d).

61. These statements are defamatory per se because they falsely impute to Plaintiff a lack of financial integrity and creditworthiness.

62. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages, including reputational harm, denial of credit, financial loss, and emotional distress.

63. Plaintiff also seeks punitive damages for Defendant's malicious and reckless conduct.

## COUNT EIGHT – VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)

*(18 U.S.C. § 1962(c))*

13

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. Defendant Midland Credit Management, Inc. ("MCM") is a "person" within the meaning of 18 U.S.C. § 1961(3).

66. At all relevant times, MCM, acting in association with its parent company Encore Capital Group, Inc., its subsidiaries—including but not limited to Asset Acceptance LLC—and other unnamed co-conspirators (including third-party consumer reporting agencies and law firms engaged as collection agents), constituted an "enterprise" as defined in 18 U.S.C. § 1961(4). This enterprise is an association-in-fact, functioning as a continuing unit with a shared purpose: collecting consumer debts and maximizing profits through unlawful, fraudulent, and deceptive practices.

67. This enterprise has existed for many years and affects interstate commerce. It is separate and distinct from the Defendant itself and has an ascertainable structure and continuity.

68. The enterprise's operations are evidenced by:
    - MCM's management of debt portfolios involving over 7 million consumers nationwide since at least 1953;
    - repeated and widespread consumer complaints regarding similar unlawful collection practices;
    - multiple regulatory enforcement actions and class-action lawsuits against MCM and Encore Capital Group, including a 2020 Consent Order by the Consumer Financial Protection Bureau ("CFPB") for violations of prior orders prohibiting unlawful debt collection tactics; and
    - a systemic pattern of misrepresentations, deceptive threats, and reporting of disputed debts to credit bureaus to pressure consumers into paying debts that may be invalid or time-barred.

69. Defendant MCM, through its officers, employees, agents, and co-conspirators, has engaged in a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). This pattern consists of multiple, related, and continuous predicate acts, including:
    - a. **Mail Fraud (18 U.S.C. § 1341):** Using the U.S. mails to send collection letters, false account statements, and other documents designed to deceive consumers into paying debts not legally owed or whose validity was disputed, including threats of wage garnishment and legal action that MCM did not intend to pursue;
    - b. **Wire Fraud (18 U.S.C. § 1343):** Transmitting false, deceptive, and misleading information via interstate wire communications, including electronic credit reporting updates, online account portals, emails, and communications with credit reporting agencies, to perpetuate the collection of disputed and potentially invalid debts.

70. These acts were part of a single fraudulent scheme to collect money on debts that were:
    - time-barred;
    - inadequately documented or unverified;
    - potentially arising from identity theft; or
    - falsely represented as subject to wage garnishment or legal action.

14

71. The pattern of racketeering activity was continuous, spanning a substantial period from at least September 2024 to the present, and poses a threat of future repetition as part of MCM's ongoing business practices.

72. Specific examples include:
    - MCM's threat on April 28, 2025, to garnish Plaintiff's wages despite having no legal basis or intent to do so, as detailed in Paragraph 12(a);
    - MCM's communication on or about May 28, 2025, claiming that "information unrelated to your dispute has been updated" while maintaining the disputed debt on Plaintiff's credit report without addressing the substance of Plaintiff's identity theft claims, as detailed in Paragraph 12(d); and
    - MCM's manipulation of credit reporting dates to improperly "re-age" the debt, falsely signaling to credit reporting agencies that the debt was more recent and collectible than it actually was, as detailed in Paragraph 12(d).

73. Each mailing and each wire transmission described above constitutes a separate predicate act of racketeering under 18 U.S.C. § 1961(1).

74. Defendant MCM conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through this pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

75. As a direct and proximate result of Defendant's RICO violations, Plaintiff has suffered injury to his business and property, including but not limited to:
    - financial losses from being denied credit or subjected to higher interest rates;
    - out-of-pocket expenses incurred in disputing the fraudulent debt and correcting credit reporting errors; and
    - damage to his credit reputation and financial opportunities.

76. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble the amount of his actual damages, plus the costs of suit and reasonable attorney's fees.

## COUNT NINE – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT (TDCA)

*(Tex. Fin. Code § 392.001 et seq.)*

77. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

78. Defendant Midland Credit Management, Inc. ("MCM") is a "debt collector" as defined by Tex. Fin. Code § 392.001(6), and the alleged obligation at issue is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

79. Defendant MCM engaged in conduct prohibited under the TDCA, including but not limited to:
    a. **Tex. Fin. Code § 392.301(a)(8)** — Threatening to take action prohibited by law, including falsely threatening wage garnishment and/or bank levy on April 28, 2025,

    as described in Paragraph 12(a);

  b. **Tex. Fin. Code § 392.304(a)(8)** — Misrepresenting the character, extent, or amount of a debt, as described in Paragraphs 12(a), 12(c), and 12(d);

  c. **Tex. Fin. Code § 392.304(a)(19)** — Using false, deceptive, or misleading representations or means to collect a debt or obtain information concerning a consumer, as described in Paragraphs 12(a), 12(c), 12(d), and 12(g).

80. As a direct and proximate result of Defendant MCM's violations of the TDCA, Plaintiff has suffered actual damages as previously described and is entitled to injunctive relief, costs, and reasonable attorney's fees pursuant to Tex. Fin. Code § 392.403.

## COUNT TEN – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT (DTPA)

*(Tex. Bus. & Comm. Code § 17.41 et seq.)*

81. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

82. Plaintiff is a "consumer" as defined in Tex. Bus. & Comm. Code § 17.45(4), because he sought or acquired services, including credit reporting and debt collection services, from Defendant Midland Credit Management, Inc. ("MCM").

83. Defendant MCM was engaged in "trade or commerce" as defined by the DTPA.

84. Defendant MCM committed false, misleading, or deceptive acts or practices in violation of Tex. Bus. & Comm. Code § 17.46(b), which were a producing cause of Plaintiff's damages, including but not limited to the following:

  a. **§ 17.46(b)(5)** – Representing that services had characteristics, uses, or benefits they did not possess, such as misrepresenting the validity and enforceability of the alleged debt, as described in Paragraphs 12(a), 12(c), and 12(d);

  b. **§ 17.46(b)(12)** – Representing that an agreement confers rights or obligations it does not have, including false claims of a legal right to garnish wages, as described in Paragraph 12(a);

  c. **§ 17.46(b)(24)** – Failing to disclose material information known at the time of the transaction, with the intent to induce Plaintiff into an obligation he would not have otherwise undertaken—such as failing to disclose the lack of proper debt validation or chain of title—as described in Paragraph 12(c);

  d. **Unconscionable conduct (§ 17.50(a)(3))** – Engaging in conduct that took advantage of Plaintiff's lack of knowledge, ability, or experience to a grossly unfair degree, including pressuring Plaintiff to pay a disputed and potentially invalid debt through false credit reporting and threats, as described in Paragraphs 12(d)–(g).

85. As a direct and proximate result of Defendant's violations of the DTPA, Plaintiff has suffered actual damages, including economic harm and mental anguish.

86. Because Defendant's actions were committed knowingly and/or intentionally, Plaintiff is entitled to recover up to three times the amount of his economic and mental anguish damages pursuant to Tex. Bus. & Comm. Code § 17.50(b)(1).

87. Plaintiff is further entitled to recover reasonable and necessary attorney's fees and court costs under Tex. Bus. & Comm. Code § 17.50(d).

## COUNT ELEVEN – VIOLATIONS OF THE TEXAS IDENTITY THEFT ENFORCEMENT AND PROTECTION ACT (ITEPA)

*(Tex. Bus. & Comm. Code § 521.001 et seq.)*

88. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

89. Plaintiff is a victim of identity theft in connection with the alleged debt that Defendant Midland Credit Management, Inc. ("MCM") is attempting to collect, as described in Paragraph 12(f).

90. The information belonging to Plaintiff that was unlawfully used or possessed constitutes "personal identifying information" and/or "sensitive personal information" as defined in Tex. Bus. & Comm. Code § 521.002.

91. Defendant MCM, as a person engaged in debt collection, failed to comply with its obligations under the ITEPA, including but not limited to Tex. Bus. & Comm. Code § 521.0011(b), by attempting to collect a debt that it knew or should have known arose from identity theft, despite having received notice of Plaintiff's denial of the account and Plaintiff's submission of an identity theft declaration to relevant authorities.

92. As a direct and proximate result of Defendant's violations of the ITEPA, Plaintiff has suffered actual damages and is entitled to relief, including the greater of actual damages or $500, injunctive relief, costs, and reasonable attorney's fees pursuant to Tex. Bus. & Comm. Code § 521.0011(g).

## COUNT TWELVE – INVASION OF PRIVACY: INTRUSION UPON SECLUSION

*(Texas Common Law)*

93. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

94. Plaintiff had a reasonable expectation of privacy and seclusion in his financial affairs and credit profile.

95. Defendant Midland Credit Management, Inc. ("MCM") intentionally intruded upon Plaintiff's seclusion through the following acts:
    a. Conducting five (5) unauthorized "soft pulls" of Plaintiff's credit reports on September 23, 2024; January 7, 2025; January 13, 2025; March 8, 2025; and April 25,

   2025, without a permissible purpose or Plaintiff's consent, as alleged in Paragraph 12(e);
   b. Making false threats of wage garnishment and/or bank levy on April 28, 2025, thereby disrupting Plaintiff's peace and invading his privacy, as alleged in Paragraph 12(a);
   c. Continuing to report unverified negative information to consumer reporting agencies during the pendency of litigation, even after Experian reported that "information unrelated to your dispute has been updated," as alleged in Paragraph 12(g).

96. Defendant's intrusions would be highly offensive to a reasonable person.

97. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages, including severe emotional distress, anxiety, and mental anguish.

98. Plaintiff is also entitled to an award of punitive damages based on Defendant's willful, malicious, and reckless disregard for Plaintiff's rights.

# COUNT THIRTEEN – VIOLATIONS OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT (CCRAA) AND THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA)

*(Cal. Civ. Code §§ 1785.1 et seq. and 1788 et seq.)*

99. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

100. Defendant MCM conducts business as a debt collector in California and is subject to California laws, including the California Consumer Credit Reporting Agencies Act (CCRAA) and the Rosenthal Fair Debt Collection Practices Act (RFDCPA).

101. Defendant MCM violated the CCRAA, Cal. Civ. Code §§ 1785.1 et seq., by:
   a. Violating § 1785.11 by making unauthorized inquiries into Plaintiff's credit profile (soft pulls) without a permissible purpose under California law, as described in Paragraph 12(e).
   b. Violating § 1785.25(a) by reporting or re-reporting information about the disputed debt that was not properly verified, and by continuing to furnish negative information during the course of litigation despite Experian's indication that "information unrelated to your dispute has been updated," as described in Paragraphs 12(d) and 12(g).

102. Defendant MCM violated the RFDCPA, Cal. Civ. Code §§ 1788 et seq., including:
   a. Violating § 1788.17 by engaging in false or misleading representations in collecting debts, including threatening wage garnishment or bank levy on April 28, 2025,

      conduct prohibited under the RFDCPA where not legally viable, as described in Paragraph 12(a).

103. As a direct and proximate result of Defendant's violations of the CCRAA and the RFDCPA, Plaintiff has suffered actual damages as previously described and is entitled to statutory damages, costs, and attorney's fees pursuant to Cal. Civ. Code §§ 1785.31 and 1788.30.

## VI. PRAYER FOR RELIEF

104. WHEREFORE, Plaintiff, PHAP ANH LE, respectfully prays for judgment against Defendants Midland Credit Management, Inc. and Encore Capital Group, Inc. as follows:

    a. For actual damages in an amount to be determined at trial, for all claims.

    b. For statutory damages for violations of the FDCPA, up to $1,000 per violation.

    c. For statutory damages for violations of the FCRA, not less than $100 and not more than $1,000 for each willful violation.

    d. For statutory damages for violations of the Texas Debt Collection Act (TDCA), in an amount not to exceed $500 per violation.

    e. For treble damages for violations of RICO, pursuant to 18 U.S.C. § 1964(c).

    f. For treble damages for violations of the DTPA, for knowing and/or intentional acts.

    g. For punitive damages for willful violations of the FCRA, Defamation Per Se, and Intrusion Upon Seclusion.

    h. For reasonable attorney's fees and costs incurred in prosecuting this action, as provided by statute.

    i. For pre-judgment and post-judgment interest at the highest rate allowed by law.

    j. For such other and further relief as this Court deems just and proper.

## VII. JURY DEMAND

105. Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

                                                __/s/ Phap Anh Le__

                                              Phap Anh Le, *Pro Se*

                                   13021 Dessau Rd, Lot 75 Austin, TX 78754

Phone: 737-226-8701

Email: pro.se@phaple.com

Dated: July 01, 2025

**EXHIBIT LIST for Second Amended Complaint**
- **Exhibit 1:** Credit reports showing tradeline
- **Exhibit 2:** Call Recording Transcript/Notes
- **Exhibit 3:** CRA responses indicating "verified" status
- **Exhibit 4:** Credit Denial/Actual Damage
- **Exhibit 5:** CFPB Consumer Complaint Records
- **Exhibit 6:** CFPB Complaint (ID: 250601-21220675)
- **Exhibit 7:** Experian Dispute Result (May 28, 2025)
- **Exhibit 8:** Midland Credit Management Interim CFPB Response (June 16, 2025)